## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEO Specialty Chemicals, Inc.<br>401 South Earl<br>Lafayette, IN 47904 | )<br>)<br>) | CASE NO.<br><br>JUDGE |
| Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>) | |
| Gregory Husisian<br>3000 K Street, N.W.<br>Suite 600<br>Washington, D.C.<br>20007-5109 | )<br>)<br>)<br>)<br>)<br>) | **VERIFIED COMPLAINT FOR<br>INJUNCTIVE AND COMPENSATORY<br>RELIEF** |
| and | )<br>) | |
| Foley and Lardner LLP<br>3000 K Street, N.W.<br>Suite 600<br>Washington, D.C.<br>20007-5109 | )<br>)<br>)<br>)<br>) | |
| Defendants | )<br>) | |

Now comes Plaintiff, GEO Specialty Chemicals, Inc., by and through its counsel, and for

its complaint against Defendants states as follows:

### PARTIES

1.      Plaintiff GEO Specialty Chemicals, Inc. ("GEO") is a corporation organized

pursuant to the laws of Ohio.  Its principal place of business is 401 South Earl Lafayette, Indiana

47904.

2.      Defendant Gregory Husisian ("Husisian") is an individual who, on information and belief, resides in the State of Virginia.

3.      Defendant Foley and Lardner ("Foley") is a limited liability partnership.  On information and belief, Foley is organized pursuant to the laws of Wisconsin, conducting business at 3000 K Street NW, in the District of Columbia.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332 as the claims arise under the laws of the United States of America and are between citizens of different states, with damages in excess of $75,000 exclusive of interest and costs.

5.      Venue is proper in this district as all claims arise from conduct within the district.

## FACTS

6.      GEO Specialty Chemicals is a U.S. manufacturer of glycine.

7.      GEO is one of two U.S. manufacturers of glycine that are "interested parties" in case A-570-836 Glycine from the People's Republic Of China, a trade case before the Import Administration unit of the U.S. Department of Commerce's International Trade Administration (the "Glycine Trade Case").

8.      The Glycine Trade Case involves issues of protecting U.S. manufacturers of glycine from injury caused by unfairly priced – "dumped" – imports into the United States of Chinese-origin glycine.

2

9.     These unfairly priced glycine imports place U.S. manufacturers – including and especially Plaintiff GEO – at a competitive disadvantage to manufacturers from China that would otherwise take substantial market share from U.S. companies like GEO.

10.     The Department of Commerce has issued an order in the Glycine Trade Case imposing tariffs upon Chinese-origin glycine imported into the United States. (the "China Order")

11.     The China Order provides a "remedy" in the form of additional customs tariffs – "antidumping duties" – on imports that have the effect of increasing the price of the Chinese-origin glycine sold in the U.S. market and leveling the playing field for U.S. glycine manufacturers in the U.S. marketplace.

12.     The Glycine Trade Case started a number of years ago, but companies that are interested parties may attempt to adjust the applicable antidumping duties under the China Order on a regular basis.  This process often involves attempts by new and existing Chinese glycine manufacturers and exporters to reduce or eliminate the amount of antidumping duties that must be paid on the glycine they ship to the United States.

13.     Plaintiff GEO is designated as one of the "interested parties" in the Glycine Trade Case because it is the largest U.S. glycine producer and is responsible for the majority of glycine sales in the U.S. market.  Any action by the Department of Commerce on the antidumping duties imposed upon a shipper of Chinese-origin glycine has a direct impact on GEO's competitive position in this market.  The lower the antidumping duty on a shipper of Chinese-origin glycine, the lower its product will be priced in the U.S. market, which drives down GEO's prices.

14.    From 2006 through 2008, GEO and two Chinese glycine shippers participated in reviews by the Department of Commerce to adjust the antidumping duties on those Chinese companies: GEO sought to raise them; the Chinese companies sought to lower them.

15.    Husisian devoted well over 1,400 hours for working on glycine related issues for GEO. Work on the China Order in the Glycine Trade Case accounted for over 300 hours of that time. In 2007 and 2008, Defendant Husisian participated in and/or led the team of lawyers for GEO in these reviews.

16.    Husisian's work included numerous and detailed contacts with the legal team, the consultants employed to assist in the data collection and analysis for the reviews and the GEO executives involved in shaping strategy and monitoring progress. Husisian was intimately involved in GEO's participation in these actions, and his name appeared on the top of the list of counsel on many documents GEO submitted to the Department of Commerce.

17.    Members of the team had access to confidential information regarding GEO's positions, strategies and work product relating to the Glycine Trade Case and the China Order. The information available to the team included research related to input values for glycine production from India, the Philippines, Indonesia and a number of other countries that are still relevant to establishing input values for glycine today.

18.    Husisian left the Thompson Hine law firm on February 28, 2009. He now practices at Foley.

19.    In October 2012, David Schwartz, counsel for GEO, received a service copy of a request for a "new shipper review" filed by Husisian in the Glycine Trade Case. Husisian filed

4

the request on behalf of Hebei Donghua Jiheng Fine Chemical Co., Ltd. and Hebei Donghua

Jiheng Chemical Co., Ltd. (the "Hebei Companies").

20.     The requested review is sought to adjust the antidumping duties to be paid on

glycine shipped by the Hebei Companies to the United States.  It will, as with any such review,

have an impact on GEO's economic interests and competitive position.

21.     Husisian served a copy of the request on counsel for GEO because GEO is an

"interested party" as that term is defined by U.S. law.

22.     Husisian knew from his prior work and from the current publicly available

interested party service list that GEO was and remained an interested party in the Glycine Trade

Case.  At no point, however, did Husisian disclose to GEO that he intended to represent the

Hebei Companies or seek or obtain a waiver of any conflict associated therewith.

23.     Upon receipt of the new shipper review request, counsel for GEO immediately

demanded that Husisian and Foley withdraw.

24.     Several weeks later, on October 17, 2012, Foley and Husisian rejected GEO's

demand, asserting that no conflict existed and confirming that they would continue to represent

the Hebei Companies adverse to GEO's interests.

25.     GEO responded immediately, pointing out that the assertions in Foley's letter

were both incomplete and inaccurate, and reiterated the demand to withdraw.  Foley and

Husisian again refused.

26.     Defendants' ongoing representation is a direct violation of D.C. Code of Professional Responsibility Rule 1.9 as well as a violation of Husisian's fiduciary duty to GEO and presents the significant threat of immediate irreparable harm by the disclosure of Plaintiff's confidential information gleaned in Husisian's prior, significant representation of Plaintiff in the same matter.

27.     Defendant Husisian owed a fiduciary duty to Plaintiff based upon his conduct as counsel for GEO in the Glycine Trade Case.

28.     Husisian's duties included, but are not limited to, not thereafter representing other parties adverse to GEO regarding the importation of glycine from the People's Republic of China and maintaining the confidences he learned while performing legal services for GEO.

29.     Husisian and Foley in concert with Husisian have breached that duty as described previously, and threaten a continuing violation of their duties by refusing to withdraw and cease representation as demanded by GEO.

30.     The law of the District of Columbia provides that an attorney's representation of a client in the same or a substantially related matter adverse to his former client creates an irrebuttable presumption that the attorney has had access to his former clients' confidences that will be disclosed in the new representation.

31.     Defendants' breach of their duties threatens irreparable harm via the disclosure of GEO's confidential information.  The damages resulting from such disclosures may be impossible to calculate with certainty, but significant damage to Plaintiff's competitive position

will likely cause damages many, many times greater than $75,000, exclusive of interest and costs, but will likewise be subject to difficulties of precise calculation.

Wherefore, Plaintiff prays for judgment against Defendants as follows:

1.      For a temporary, preliminary and permanent injunction prohibiting Gregory Husisian or any other attorney at Foley and Lardner from representing any entity in case A-570-836 Glycine from the People's Republic Of China.

2.      For compensatory damages, including Plaintiff's attorney fees and costs herein, in an amount to be determined, but not less than $100,000.

3.      For an award of its attorney's fees and case expenses herein.

4.      For such other relief to which Plaintiff is entitled in equity or at law.

Respectfully submitted,

/s/ Thomas L. Feher

_____

Thomas L. Feher, Esq.
Tom.Feher@thompsonhine.com
THOMPSON HINE LLP
1919 M St., NW, Suite 700
Washington, DC 20036
(216) 566-5532
(216) 566-5800 (fax)

VERIFICATION

I have reviewed the factual allegation in Plaintiff GEO Specialty Chemicals Inc.'s Verified Complaint.  Based upon my personal knowledge of the matters therein, I affirm that the allegations are true.

_____
Matthew Nicely, Esq.