UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEO SPECIALTY CHEMICALS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 12-01819 (RJL) |
| ) | |
| GREGORY HUSISIAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION
(February 8, 2013) [#4]

FILED
FEB 11 2013
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff GEO Specialty Chemicals, Inc. ("plaintiff" or "GEO") seeks a preliminary injunction[1] against defendants Gregory Husisian ("Husisian") and Foley and Lardner LLP ("Foley") (collectively, "defendants") to enjoin them from representing two companies that are alleged to be directly adverse to plaintiff, a former client of the defendants. After due consideration of both parties' pleadings and their oral arguments, plaintiff's Motion for a Preliminary Injunction is DENIED.

BACKGROUND

Defendant Husisian is an attorney who formerly practiced law at Thompson Hine LLP ("Thompson Hine"), a law firm that represents the largest producer of glycine in the

---

[1] Plaintiff originally moved for a Temporary Restraining Order ("TRO"), which this Court denied and converted into a preliminary injunction motion on November 19, 2012.

1

United States, plaintiff GEO. *See* Compl. ¶¶ 13-18, ECF No. 1.  While employed at Thompson Hine, Husisian devoted more than 1,400 hours to working on glycine-related trade matters for GEO, including over 300 hours dedicated to assisting GEO with a particular trade case before the Import Administration unit of the U.S. Department of Commerce's International Trade Administration.  *See id.* ¶¶ 7-11, 15-16.  More specifically, GEO was, and continues to be, an "interested party" in case A-570-836 Glycine from the People's Republic of China (the "Glycine Trade Case"), which involves issues relating to the protection of U.S. glycine manufacturers from harm caused by unfairly priced, or "dumped," imports of Chinese-origin glycine into the United States. *See id.* ¶¶ 8, 12-13.  During the pendency of this trade case, the Department of Commerce issued a remedial Order (the "China Order") that imposed additional customs tariffs, or "antidumping duties," on any Chinese-origin glycine to prevent Chinese glycine manufacturers from taking a substantial market share from U.S. producers like GEO. *See id.* ¶¶ 9-11.  In 2007 and 2008, when two Chinese shippers sought to lower their glycine antidumping duties by challenging the existing China Order, Husisian, on behalf of GEO, participated in the Department of Commerce's review of the shippers' requests and the China Order.  *See id.* ¶¶ 14-17.  On February 28, 2009, Husisian left Thompson Hine, and later joined Foley.  *See id.* ¶ 18.

      On October 1, 2012, David Schwartz, a Thompson Hine attorney who currently

---

*See* Pl.'s Mot. for TRO/Prelim. Injunct. ("Pl.'s TRO/PI Mot."), ECF No. 4; Civ. Case No.

represents GEO, was notified of a "new shipper review" in the Glycine Trade Case, filed by Husisian. *See id.* ¶ 19; Pl.'s Mem. in Supp. of Mot. for TRO/Prelim. Injunct. ("Pl.'s TRO/PI Mem.") at 4, ECF No. 5-1. Now a practicing attorney at Foley, Husisian had requested a new shipper review on behalf of two Chinese entities, Hebei Donghua Jiheng Fine Chemical Co., Ltd. and Hebei Donghua Jiheng Chemical Co., Ltd. (the "Hebei Companies"), who sought to adjust the antidumping duties to be paid on glycine shipped by the Hebei Companies from China to the United States, as set out in the China Order. *See id.* ¶¶ 18-20. The following day, GEO insisted that Husisian and Foley withdraw from the representation because GEO remained an "interested party" in the Glycine Trade Case, and Husisian's representation of the Hebei Companies in a new shipper review in the same trade case would be adverse to Husisian's former client, in violation of D.C. Code of Professional Responsibility Rule 1.9. *See id.* ¶ 23; Pl.'s TRO/PI Mem., Ex. B, ECF No. 5-3. Husisian and Foley refused to terminate the representation, however. *See* Compl. ¶ 24; Pl.'s TRO/PI Mem., Ex. C, ECF No. 5-4.

On November 8, 2012, nine days after the defendants refused to withdraw from their representation of the Hebei Companies for the second time, *see* Compl. ¶ 25, Pl.'s TRO/PI Mem., Ex. E, ECF No. 5-6, plaintiff brought the instant action, seeking injunctive relief to prevent Husisian or other attorneys at Foley from representing any

---

12-01819, Minute Entry, Nov. 19, 2012.

entity in the Glycine Trade Case.[2] *See generally* Compl.  Five days later, plaintiff filed a Motion for a Temporary Restraining Order, which the Court denied and converted into a Motion for a Preliminary Injunction on November 19, 2012.  *See* Pl.'s TRO/PI Mot.; Civ. Case No. 012-1819, Minute Entry, Nov. 19, 2012.  After the parties briefed the motion, this Court heard argument from both sides on November 30, 2012.  *See* Civ. Case No. 12-01819, Minute Entry, Nov. 30, 2012.  Because the plaintiff has failed to establish the requisite likelihood of irreparable harm to warrant a preliminary injunction, however, its motion must be DENIED.

## ANALYSIS

### 1. Legal Standard for a Preliminary Injunction

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Indeed, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

In deciding whether to grant a preliminary injunction, a court must weigh: (1) whether "the plaintiff has a substantial likelihood of success on the merits"; (2) whether "the plaintiff would suffer irreparable injury were an injunction not granted"; (3) whether

---

[2] In addition to injunctive relief, GEO, in its suit, also requests compensatory damages, as well as attorneys' fees and costs, for the defendants' alleged violation of the D.C. Code of

4

"an injunction would substantially injure other interested parties"; and (4) whether "the grant of an injunction would further the public interest." *Ark. Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009); *accord Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011). The movant, of course, carries the burden of persuasion. *See Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

Although "these factors interrelate on a sliding scale[3] . . . the movant must, at a minimum, demonstrate that irreparable injury is *likely* in the absence of an injunction." *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 334-35 (D.D.C. 2009) (internal quotation marks and citations omitted) (emphasis in original). A mere possibility of irreparable harm is not enough, *see Winter*, 555 U.S. at 22, and a court may refuse to issue an injunction without considering any other factors when irreparable harm is not demonstrated.[4] For the following reasons, this Court finds that GEO's motion fails

---

Professional Responsibility and Husisian's breach of his fiduciary duty to GEO. *See generally* Compl.; *id.* ¶¶ 26-31.

[3] There has been some discord among the circuits as to whether courts should consider the four preliminary injunction factors on a sliding scale, or whether the factors should each be established independently. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). Because our Circuit has yet to resolve this question, however, *see id.*, this Court will continue to employ the less demanding sliding scale approach, which courts in our Circuit have traditionally used. *See Tyndale House Publishers, Inc. v. Sebelius*, No. 12-1635, 2012 WL 5817323, at *4 n.6 (D.D.C. Nov. 16, 2012).

[4] *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief"); *see also Sampson v. Murray*, 415 U.S. 61, 68 (1974) (stating that "'[t]he basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies'") (citation omitted); *CityFed Fin. Corp. v. Office of Thrift*

on this basis.

## 2. GEO Has Failed To Demonstrate That It Will Suffer Irreparable Harm

In our Circuit, there is a high standard to establish irreparable harm sufficient to justify injunctive relief. *Chaplaincy*, 454 F.3d at 297. Indeed, "proving irreparable injury is a considerable burden, requiring proof that the movant's injury is *certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)) (internal quotation marks omitted) (emphasis in original); *see also Comm. in Solidarity with People of El Sal. (CISPES) v. Sessions*, 929 F.2d 742, 745-46 (D.C. Cir. 1991) ("Injunctions . . . will not issue to prevent injuries neither extant nor presently threatened, but only merely feared.") (internal quotation marks and citations omitted).

Furthermore, "the movant [must] substantiate the claim that irreparable injury is likely to occur." *Wis. Gas Co.*, 758 F.2d at 674 (internal quotation marks and citation omitted). More specifically, the movant, "must provide proof that the harm has occurred

---

*Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("Because CityFed has made no showing of irreparable injury here, that alone is sufficient for us to conclude that the district court did not abuse its discretion by rejecting CityFed's request [for a preliminary injunction]."); *TD Bank, N.A. v. Pearl*, No. 12-01315, 2012 WL 4101946, at *7 (D.D.C. Sept. 19, 2012) ("'A showing of irreparable harm is the *sine qua non* of the preliminary injunction inquiry.'") (citation omitted); *Cornish v. Dudas*, 540 F. Supp. 2d 61, 64 (D.D.C. 2008) ("Where a party has made no showing of irreparable injury, injunctive

in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.*; *see also Sterling Commercial Credit—Mich., LLC v. Phoenix Indus. I, LLC*, 762 F. Supp. 2d 8, 14-15 (D.D.C. 2011). "Bare allegations of what is likely to occur are of no value." *Wis. Gas Co.*, 758 F.2d at 674; *see also Int'l Internships Programs v. Napolitano*, 798 F. Supp. 2d 92, 100 (D.D.C. 2011).

Last, it is "well-settled that economic loss does not, in and of itself, constitute irreparable harm" because it is merely economic in character and not sufficiently grave enough to warrant emergency injunctive relief. *Wis. Gas Co.*, 758 F.2d at 674; *see also Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995). Indeed, "'[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.'" *Champlaincy*, 454 F.3d at 297-98 (citation omitted). Only where a plaintiff establishes that the economic loss is so severe as to threaten the very survival of its business can economic harm qualify as irreparable. *See Wis. Gas Co.*, 758 F.2d at 674; *TD Int'l, LLC v. Fleischmann*, 639 F. Supp. 2d 46, 48 (D.D.C. 2009).

GEO contends that, due to Husisian's former representation of GEO in the Glycine Trade Case, this Court must enjoin Husisian and Foley from representing the Hebei Companies in their new shipper review of the China Order to protect against Husisian's disclosure of GEO's confidences to directly adverse entities in the same or a related

---

relief may be unavailable regardless of the showings on the other factors.").

matter. *See generally* Pl.'s TRO/PI Mem.; *see also* Pl.'s Reply Mem. in Supp. of PI Mot. ("Pl.'s Reply") at 2, 4, ECF No. 17. In essence, GEO argues that, because Husisian "may have had access to—at a minimum—privileged and confidential information relating to GEO's strategy" in the Glycine Trade Case "that could be useful" in the defendants' representation of the Hebei Companies, the defendants will share such privileged information with the Hebei Companies, in violation of Husisian's ethical and fiduciary duties, unless this Court grants injunctive relief. *Id.* Husisian and Foley counter that GEO's allegations of irreparable harm are, at best, speculative, as GEO cannot demonstrate that Husisian will divulge GEO's confidential information to the Hebei Companies, much less in the near future. *See* Defs.' Brief in Opp'n to Pl.'s PI Mot. ("Defs.' Opp'n") at 18-19, 21-22, ECF No. 16. In addition, defendants argue that the alleged injury that GEO will incur as a result of defendants' representation of the Hebei Companies is entirely economic, and therefore cannot be irremediable. *Id.* at 19-21. I agree.

First, I find that GEO has failed to show that, absent injunctive relief, it will suffer irreparable harm for which there is no suitable remedy at law. Put simply, GEO's assertions of impending injury, namely the "invasion or betrayal of the attorney-client relationship" caused by Husisian's disclosure of GEO's confidential information to the Hebei Companies, are far too speculative to support the sort of extraordinary relief that GEO seeks. *See* Pl.'s Reply at 2; *Connecticut v. Massachusetts*, 282 U.S. 660, 674

(1931) (injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time in the future"). Indeed, GEO has provided no evidence whatsoever that Husisian or Foley have shared GEO's proprietary information or knowledge with the Hebei Companies, much less employed such data on behalf of the Hebei Companies in the Glycine Trade Case. *See Wis. Gas. Co.*, 758 F.2d at 674 (because "the court must decide whether the harm will *in fact* occur," it requires "proof indicating that the harm is certain to occur in the near future"; naked assertions of what is likely to happen have no worth). In fact, the only factual support of note that GEO provides in support of its preliminary injunction motion is a declaration by Thompson Hine attorney Matthew R. Nicely,[5] and even that is full of hypotheticals, assumptions and possibilities, rather than likelihoods, actualities and forthcomings.[6] GEO does not offer

---

[5] *See* Affidavit of Matthew R. Nicely in Support of Pl.'s TRO/PI Mot. ("Nicely Decl."), ECF No. 19. Per Local Civil Rule 65.1(c), a party's motion for a preliminary injunction "shall be supported by all affidavits on which the plaintiff intends to rely." LCvR 65.1(c).

[6] *See, e.g.*, Nicely Decl. ¶ 24 ("During Husisian's tenure as its counsel, GEO also considered and sought other strategies for addressing trade disputes with Chinese manufacturers outside the context of the reviews themselves. These strategies are still applicable today and *could* still be applied as to the [Hebei Companies].") (emphasis added); *id.* ¶ 80 ("Husisian's knowledge regarding GEO's glycine business, GEO's knowledge, or lack thereof, concerning the relevant markets, the information that GEO collected relating to values from Indonesia, India, the Philippines, Sri Lanka, and Egypt, and information that GEO may have decided not to submit to the Department of Commerce during the prior proceedings related to the China Order is relevant to and *would be helpful* to the Hebei Companies as they develop a strategy to attempt to counter GEO's arguments in the pending reviews.") (emphasis added); *id.* ¶ 83 ("Small shifts in the dumping margin for glycine from a Chinese company *can* have a direct impact on the glycine market in the United States, leading to *possible* losses in revenue easily in excess

any evidence that demonstrates, for example, that Husisian has violated his ethical or fiduciary obligations[7] to GEO or other clients in the past, or that Husisian or Foley discussed, disclosed or submitted anything related to GEO's privileged or confidential information to the Hebei Companies or the U.S. Department of Commerce's International Trade Administration. *See Wis. Gas. Co.*, 758 F.2d at 674 (to substantiate the likelihood of irreparable harm, movant can "provide proof that the harm has occurred in the past and is likely to occur again"). As such, GEO has utterly failed to establish that irreparable harm is likely, and "not just a possibility." [8]

In addition, GEO has failed to demonstrate that the competitive harm that it will

---

of $75,000.") (emphasis added).

[7] As a member of the bar, Husisian has an ongoing obligation to protect attorney-client privileged information, which includes confidential communication made between himself and GEO for the purpose of securing legal advice or services. *See In re Lindsey*, 148 F.3d 1100, 1103 (D.C. Cir. 1998); *Assassination Archives & Research Ctr. v. CIA*, 48 F. Supp. 2d 1, 7 (D.D.C. 1999). But GEO has provided no reason for this court to assume that Husisian would breach his own legal and ethical duties which he, as a practicing attorney for the past thirty years, is unquestionably aware of. Indeed, if GEO concerned itself more with providing supporting evidence, rather than speculative conjectures, it could turn to Husisian's prior representation of numerous foreign companies, such as the Hebei Companies, who are impacted by antidumping duty orders put in place on their exports, to look for proof of previous breaches on the part of Husisian. *See* Defs.' Opp'n, Ex. 1 ("Husisian Decl.") ¶ 3, ECF No. 16-1.

[8] *Winter*, 555 U.S. at 21-22 (rejecting a standard that would require a plaintiff to demonstrate only a "possibility" of irreparable injury); *see also Int'l Internships Programs*, 798 F. Supp. 2d at 100 ("plaintiff's bald assertions . . . simply do not suffice to prove irreparable injury"); *Miniter v. Moon*, 684 F. Supp. 2d 13, 16 (D.D.C. 2010) (denying injunctive relief where plaintiff failed to provide the court with any supporting evidence to substantiate his claims of irreparable harm); *Deen-Mitchell v. Lappin*, No. 09-2069, 2010 WL 3831388, at *1 (D.D.C. Sept. 27, 2010) (holding that, because plaintiff "supports the motion with nothing more than speculation and hyperbole,"

suffer without a preliminary injunction amounts to anything but pure economic loss. Although GEO insists that the irreparable harm at issue is purely an injury of disclosed confidences, "regardless of the economic consequences involved," it is hard for this court to ignore the fact that, in GEO's own words, "[j]ust a small change in [the Hebei Companies' import duty] margin will have a dramatic and significant effect on GEO's business." Pl.'s Reply at 2-3. Indeed, GEO projects that the company's revenues will decline by $75,000 if a Chinese company, such as the Hebei Companies, were able to shift the dumping margin for Chinese-origin glycine in its favor, and that the "harm caused to the U.S. glycine industry by Husisian's disclosure of GEO's information and knowledge," rather than the disclosure itself, "would be irreparable." See Nicely Decl. ¶¶ 83-84; see also Compl. ¶ 31 ("The damages resulting from [disclosure of GEO's confidential information] may be impossible to calculate with certainty, but significant damage to [p]laintiff's competitive position will likely cause damages many, many times greater than $75,000, exclusive of interest and costs.")

Moreover, GEO has failed to demonstrate that, if the Hebei Companies' dumping margins were lowered as a result of the defendants' representation in the Glycine Trade Case, GEO's anticipated loss of revenue and market share would rise to the level of irreparable harm. See Pl.'s Reply at 3-4; Nicely Decl. ¶¶ 81-84; *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 42 (D.D.C. 2000) ("Courts within the Circuit have generally

---

plaintiff had not shown his entitlement to a preliminary injunction).

been hesitant to award injunctive relief based on assertions about lost opportunities and market share."). More specifically, GEO has failed to demonstrate that there is no adequate remedy at law for the potential sales loss that it claims would result, nor shown that GEO's would-be financial shortfalls are incalculable or threaten the very survival of its business.[9] Indeed, aside from speculative allegations of loss of revenue and other market advantages, all of which are merely economic, GEO has completely failed to demonstrate the certainty or imminence of its financial deficits.[10] *See Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009) (noting the "general rule that

---

[9] *See R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 823 F. Supp. 2d 36, 50 (D.D.C. 2011) ("the standard for irreparable economic harm in our Circuit is so demanding that the proof of even tens of millions of dollars in economic detriment does not necessarily suffice."); *Cent. & S. Motor Freight Tariff Ass'n v. United States*, 757 F.2d 301, 308-09 (D.C. Cir. 1985) (observing that "'revenues and customers lost to competition which can be regained through competition are not irreparable'") (citation omitted). Indeed, should GEO ultimately prevail, its economic losses can be remedied with money damages, which GEO specifically requests as relief in its complaint. *See generally* Compl.; *see also Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999); *Wis. Gas Co.*, 758 F.2d at 674; *Gray v. Dist. of Columbia*, 477 F. Supp. 2d 70, 75 (D.D.C. 2007).

[10] For instance, GEO conjectures that because the Hebei Companies *could* supply the U.S. glycine market's total annual consumption due to their large production capacity, they *will* drive the U.S. glycine industry out of business if a lower dumping margin is achieved by the companies. *See* Nicely Decl. ¶¶ 81-83. However, without any specific details to support its conclusory assertions about what "could" ensue without injunctive relief, this Court cannot not blindly accept GEO's allegations as true. *See Barton v. Venneri*, No. 05-0669, 2005 WL 1119797, at *3 (D.D.C. May 11, 2005) (denying plaintiff's preliminary injunction motion because "plaintiff has not submitted any competent evidence into the record (i.e., affidavits, exhibits) that would permit the Court to assess whether she, in fact, faces irreparable harm"); *American BioScience, Inc. v. Thompson*, 141 F. Supp. 2d 88, 97 (D.D.C. 2001) ("Only though [] precise descriptions can the Court assess the irreparability of an injury.").

economic harm does not constitute irreparable injury"); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) (rejecting declarant's representations about the current and future health of plaintiff's small business members because he offered nothing more than conclusory projections that are at, "at best, remote and speculative") (citation omitted). Given that GEO, in the company's own words, "is the largest U.S. glycine producer and is responsible for the majority of glycine sales in the U.S. market," Compl. ¶ 13, this absence of monetary particulars may be purposeful, as a prospective loss to GEO of $75,000 in revenue as a result of defendants' actions is neither definite nor great enough to support a finding of irreparable harm.[11]

Having failed to find that irreparable injury would result from a denial of GEO's motion, the Court need not reach the other factors necessary to warrant injunctive relief. *See CityFed Fin. Corp.*, 58 F.3d at 747. As such, GEO has failed to carry its burden of persuasion, *see Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997), and injunctive relief must therefore be DENIED.

---

[11] *See, e.g., Mylan Labs. Ltd. v. U.S. Food and Drug Admin.*, No. 12-1637, 2012 WL 6705957, at *12 (D.D.C. Dec. 27, 2012) (loss in first-year sales of up to $44.55 million, or perhaps more, does not constitute irretrievable financial losses when annual revenues calculated to be close to $7 billion); *LG Elecs. U.S.A., Inc. v. Dep't of Energy*, 679 F. Supp. 2d 18, 36 (D.D.C. 2010) ("Even assuming [plaintiff] will not be able to recover monetary damages from [defendant], however, the financial impact [plaintiff] claims it will suffer does not rise to the level of irreparable harm . . . . [because] its potential financial losses . . . . represent a minuscule portion of the company's worldwide revenues[.]"); *Apotex, Inc. v. Food and Drug Admin.*, No. 06-0627, 2006 WL 1030151, at *16-17 (D.D.C. Apr. 19, 2006) (loss of 1.4 percent of company's total annual revenue not irreparable harm).

## CONCLUSION

Thus, for all of the above reasons, the Court DENIES plaintiff's Motion for Preliminary Injunction. An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge