UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEO SPECIALTY CHEMICALS, INC.,  ) | |
| ) | |
| **Plaintiff**,  ) | |
| ) | |
| v.  ) | **Case No. 12-cv-1819 (RJL)** |
| ) | |
| GREGORY HUSISIAN, *et al.*,  ) | |
| ) | |
| **Defendants**.  ) | |

## MEMORANDUM OPINION
(June **24**, 2013) [Dkt. #10]

Plaintiff GEO Specialty Chemicals, Inc. ("plaintiff" or "GEO") brings this case

against its former outside counsel, Gregory Husisian ("Husisian"), and his current law

firm, Foley and Lardner LLP ("Foley") (collectively, "defendants"), alleging breach of

fiduciary duty and seeking injunctive relief and monetary damages.  *See generally* Compl.

[Dkt. #1].  Before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter

Jurisdiction [Dkt. #10].  The Court finds that it *does* have subject matter jurisdiction, but

it will nevertheless DISMISS the complaint *sua sponte* for failure to state a claim.

## BACKGROUND

GEO is the largest producer of glycine in the United States.[1]  *See* Compl. ¶ 13.  As

---

[1] "Glycine is an amino acid, one of 20 used to make proteins in the human body," and it is
used in several medical treatment regimens, including those for schizophrenia, type 2
diabetes, and brain damage caused by stroke.  WebMD, http://www.webmd.com/

such, the company benefits greatly from customs tariffs—also called "antidumping duties"—that are imposed by the United States Department of Commerce on Chinese glycine producers to prevent them from selling (or "dumping") glycine in the United States at below-market prices. *Id.* ¶¶ 7–8, 11, 13. In 1995, the Commerce Department published the Antidumping Duty Order—or "China Order," as plaintiffs call it—establishing the initial duties, and since then, the Commerce Department's International Trade Administration ("ITA") has reviewed and adjusted the tariffs in various proceedings under the heading "Glycine from the People's Republic of China (A-570-836)," which plaintiffs refer to as "the Glycine Trade Case." *Id.* ¶¶ 7, 10–13.

In 2007 and 2008, Husisian, then an attorney at the law firm of Thompson Hine LLP ("Thompson Hine"), represented GEO before the ITA. *Id.* ¶ 15. At that time, the Commerce Department was considering an adjustment to the antidumping duties paid by two existing Chinese glycine shippers. *Id.* ¶ 14. The Chinese companies favored a reduction; GEO opposed it. *Id.* Husisian worked more than 300 hours on the matter, during which time he had contact with GEO's legal team, consultants, and executives

---

vitamins-and-supplements/glycine-uses-and-risks (last visited May 9, 2010); *see also* http://en.wikipedia.org/wiki/Glycine (last visited May 9, 2010) ("Glycine (abbreviated as Gly or G) is an organic compound with the formula $NH_2CH_2COOH$. Having a hydrogen substituent as its side-chain, glycine is the smallest of the 20 amino acids commonly found in proteins." (footnote omitted)). Glycine also has a wide range of non-medicinal uses. For instance, glycine is an additive in both human and animal food products, a buffering agent in cosmetics and toiletries, and a chemical component of rubber sponges and fertilizers. *See* http://en.wikipedia.org/wiki/Glycine.

who collected and analyzed data, devised strategy, and monitored progress. *Id.* ¶¶ 15–16.

Some of the individuals with whom Husisian interacted had access to GEO's confidential

information, strategies, and work product. *Id.* ¶ 17.

Husisian left Thompson Hine in 2009 and is now a partner at Foley. *Id.* ¶ 18.  In

October 2012, GEO learned that Husisian and Foley are representing two Chinese glycine

producers—Hebei Donghua Jiheng Fine Chemical Co., Ltd. and Hebei Donghua Jiheng

Chemical Co., Ltd. ("the Hebei Companies")—as they enter the U.S. market and request a

"new shipper review" from the ITA. *Id.* ¶ 19.  Husisian never communicated with GEO

about these new representations, though his success in lowering antidumping duties for

the Hebei Companies would harm GEO by allowing cheaper Chinese glycine to enter the

United States. *Id.* ¶¶ 20, 22.  GEO twice demanded that Husisian and Foley withdraw

from their representation of the Hebei Companies; Husisian and Foley have refused,

maintaining that there is no conflict of interest. *Id.* ¶¶ 23–25.

On November 8, 2012, after defendants refused for a second time to withdraw,

GEO brought this lawsuit, claiming that defendants are violating D.C. Rule of

Professional Conduct ("DCRPC") 1.9 and breaching fiduciary duties by representing the

Hebei Companies. *Id.* ¶¶ 26–29.  Five days later, GEO moved for a temporary restraining

order, *see* Mot. for TRO [Dkt. #4], which I denied and converted into a preliminary

injunction motion, *see* Minute Entry (Nov. 19, 2012).  Ultimately, I denied the

preliminary injunction, finding that GEO had not established that any irreparable harm

would result from defendants' conduct. *See* Mem. Op. at 13 [Dkt. #25].

Now before this Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. Defendants' primary contention is that GEO's claims fall under the exclusive jurisdiction of the Court of International Trade ("CIT"). *See* Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 2–5 [Dkt. #10-1] ("GEO has filed suit in the wrong court."). They argue in the alternative that GEO has failed to exhaust administrative ITA remedies and that the Court has neither federal question nor diversity jurisdiction. *See id.* at 5–8. Predictably, GEO disagrees and counters with arguments supporting this Court's jurisdiction to hear and decide the case. *See* Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [Dkt. #15].

## LEGAL STANDARD

Defendants argue that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. When facing such a motion, it is the plaintiff's burden to prove by a preponderance of the evidence that the court does in fact have jurisdiction over the case. *See Budik v. Datmouth-Hitchcok Med. Ctr.*, --- F. Supp. 2d ----, 2013 WL 1386211, at *4 (D.D.C. Apr. 5, 2013) (citing *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004)). The Court, meanwhile, must construe the complaint liberally, accept all factual allegations as true, and draw all inferences in the plaintiff's favor. *Id.* (citing *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). In addition, the Court may, if it so chooses, look

4

beyond the complaint and consider material outside of the pleadings. *See Shade v. U.S. Congress*, ---F. Supp. 2d ----, 2013 WL 1694462, at \*2 (D.D.C. Apr. 19, 2013) (citing *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)).

Even where a defendant does not move to dismiss under Rule 12(b)(6), courts in our Circuit can still "dismiss a complaint *sua sponte* for failure to state a claim for which relief can be granted if, 'taking all the material allegations of the complaint as admitted and construing them in the plaintiff's favor,' the court determines that the plaintiff's complaint could not possibly entitle him to relief.'" *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 12 (D.D.C. 2010) (quoting *Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 373–74 (D.C. Cir. 2000)); *see also Jaeger v. United States*, No. 06-625(JDB), 2006 WL 1518938, at \*1 (D.D.C. May 26, 2006).

Under Rule 12(b)(6), the Court must dismiss plaintiffs' complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Twombly*, 550 U.S. at 555 (factual allegations must "be enough to raise a right to relief above the speculative level"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When analyzing a plaintiff's claims, the Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted).   But "the court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint.   Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).   Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ANALYSIS

The Court finds that the CIT does *not* have exclusive jurisdiction over plaintiff's claims.   Regardless of whether the CIT has the authority to disqualify conflicted counsel, defendants cite no authority—and the Court is not aware of any—standing for the proposition that the CIT can hear a breach of fiduciary duty action against a private party or award compensatory damages for a breach.   This Court, on the other hand, has subject matter jurisdiction over the entire case pursuant to the diversity statute, 28 U.S.C. § 1332.

Although this Court has jurisdiction over plaintiff's putative claims, the Court

6

cannot overlook that the complaint fails to plead facts supporting a plausible right to

relief.  Indeed, drawing all inferences in plaintiff's favor, a factfinder could not possibly

conclude that the Hebei Companies' new shipper review is "the same or [] substantially

related" to the proceedings in which Husisian represented GEO.  Nor are there allegations

to support an inference that defendants' representation of the Hebei Companies is the

proximate cause of any damages to GEO.  Thus, plaintiff has failed to state a claim under

either Rule 1.9 or a breach of fiduciary duty theory, and the Court will dismiss the

complaint.

**I.      This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims.**

      **A.      The CIT Does Not Have Exclusive Jurisdiction.**

The parties agree that 28 U.S.C. § 1581(i) is the relevant jurisdictional statute in

this case.  *See* Def.'s Mem. at 3; Pl.'s Opp'n at 2.  It states, in part:

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil
> action commenced against the United States, its agencies, or its officers, that
> arises out of any law of the United States providing for—
> > **(1)** revenue from imports or tonnage;
> > **(2)** tariffs, duties, fees, or other taxes on the importation of merchandise
> > for reasons other than the raising of revenue;
> > **(3)** embargoes or other quantitative restrictions on the importation of
> > merchandise for reasons other than the protection of the public health
> > or safety; or
> > **(4)** administration and enforcement with respect to the matters referred
> > to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this
> > section.

In addition, defendants cite § 1581(c) and (i) as conferring on the CIT exclusive

jurisdiction over objections to ITA rulings. *See* Def.'s Mem. at 3.[2]  On its face, however,

§ 1581(i) refers to "civil action[s] commenced against the United States, its agencies, or

its officers"; it says nothing about tort claims between private parties.

Undaunted, defendants argue that the CIT has, not just jurisdiction, but *exclusive*

jurisdiction over this case because that court has addressed conflicts of interest and

disqualification issues in the past. *See* Def.'s Mem. at 3–5 (citing *Makita Corp. v. United*

*States*, 819 F. Supp. 1099 (Ct. Int'l Trade 1993); *Shakeproof Indus. Prods. Div. of Ill.*

*Tool Works Inc.*, 104 F.3d 1309 (Fed. Cir. 1997)).  Please!  Neither *Makita* nor

*Shakeproof* support defendants' position.

In *Makita*, the plaintiff brought a case against the United States and specifically the

U.S. Department of Commerce, claiming that a petitioner in an ITA antidumping

proceeding was represented by conflicted counsel, and seeking an injunction to remedy

the conflict.  819 F. Supp. at 240–42.  The ITA determined that it did not have

jurisdiction to enjoin counsel from participating in the proceeding or accessing documents

under an administrative protective order based on an alleged conflict. *Id.* at 242.  The

CIT disagreed and held that it *did* have jurisdiction, as well as "plenary authority and

responsibility to supervise professional conduct." *Id.* at 245.  But it also found that its

authority was limited in one key respect:  "Since only the ITA is properly before the

---

[2] *See also Camargo Correa Metais, S.A. v. United States*, 52 F.3d 1040, 1042–43 (Fed.
Cir. 1995); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987).

court, relief can only be granted against it." *Id.* at 250.  The CIT then granted plaintiff's

injunction "to the extent that the defendants and their officers, employees, agents,

servants, sureties and assigns be, and each hereby is, enjoined from allowing [conflicted

counsel] any access to the ITA's investigations of [plaintiff]." *Id.* at 251.  The CIT *did*

*not* hold that its jurisdiction extends to claims for injunctive and compensatory relief

between private parties.

      The same is true of *Shakeproof.*  In that case, the plaintiff brought a claim against

United States and the U.S. Department of Commerce claiming that the ITA behaved

arbitrarily and capriciously when, over plaintiff's objection, it allowed an allegedly

conflicted attorney to access confidential documents relating to an antidumping

investigation.  104 F.3d at 1311–12.  The CIT denied plaintiff's request for an injunction

barring the attorney from participating in the antidumping proceeding, and the Federal

Circuit affirmed, both finding that the attorney was not conflicted.  *Id.* at 1312–14.  The

Federal Circuit explicitly bypassed, however, any consideration of § 1581(i) and the

timing of the CIT's review.  *Id.* at 1313.  Instead, the court held that it was "unnecessary

to decide that issue when it has concluded that the plaintiff was not entitled to relief in

any event."  *Id.*  Because the court found that no conflict existed in the first place, it did

not discuss the scope of potential relief, much less suggest that the CIT had jurisdiction to

award monetary damages or issue an injunction directly against the law firm or lawyer.

      Indeed, the Federal Circuit addressed the CIT's jurisdiction over claims between

private parties just last year in *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041 (Fed. Cir. 2012). There, the court held that the CIT had *no* jurisdiction over claims brought by domestic food producers against private customs bond sureties because "§§ 1581, 1582, and 1584 grant the [CIT] jurisdiction over specific types of claims mostly involving trade law that are ***asserted by or against the United States***." *Id.* at 1051 (emphasis added). The court also found that supplemental jurisdiction provisions, § 1583 and § 1367, did not apply. *Id.* at 1051–54; *see also Pat Huval Rest. & Oyster Bar, Inc. v. U.S. Int'l Trade Comm'n*, 823 F. Supp. 2d 1365, 1380–81 (Ct. Int'l Trade 2012) (denying motion to amend complaint to add claim against private party because claim would be outside of court's subject matter jurisdiction and therefore futile).

Of course, in this case, GEO asks for more than just an injunction directing the ITA to deny Husisian and Foley access to documents under an administrative protective order. *See* Compl. at 7 (seeking compensatory damages); Pl.'s Opp'n at 6 ("[T]he CIT could not do anything to enjoin Husisian and Foley from consulting or advising the Hebei Companies (or other Chinese producers) behind the scenes, using privileged and confidential information they already have adverse to GEO."). According to *Makita*, such a narrow injunction is the only relief that the CIT could grant under these circumstances, *see* 819 F. Supp. at 250–51, and that alone would require plaintiff to sue the United States rather than defendants, *see Sioux Honey Ass'n*, 672 F.3d at 1051–54. The CIT cannot award compensatory damages or enjoin Husisian or Foley from engaging in any conduct

10

outside of the immediate purview of the ITA's antidumping proceeding.[3]  Our Circuit has

recognized that "the federal district courts can assert jurisdiction, under appropriate

jurisdictional grants, over customs-related matters in which no adequate remedy exists in

the" CIT. *Timken Co. v. Simon*, 539 F.2d 221, 226 n.7 (D.C. Cir. 1976). For the

following reasons, the diversity statute is an "appropriate jurisdictional grant[]" here.

### B.    This Court Has Diversity Jurisdiction.

Plaintiff and defendants agree that the parties to this lawsuit are all citizens of

different states as required by 28 U.S.C. § 1332(a)(1). *See* Def.'s Mem. at 7; Pl.'s Opp'n

at 9; *see also* Compl. ¶¶ 1–3. Defendants contend, however, that GEO's damages are too

speculative and therefore do not meet the amount-in-controversy requirement.

Defendants are incorrect, and the Court will not dismiss the case on that ground.

It is well established in our Circuit that "a complaint should not be dismissed for

want of the requisite jurisdictional amount unless it appears 'to a legal certainty' that the

plaintiff's claim does not amount to [the statutory minimum]." *Smith v. Washington*, 593

F.2d 1097, 1099 (D.C. Cir. 1978) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*,

---

[3] For the same reason, defendants' argument that GEO failed to exhaust administrative remedies is also meritless. *See Stewart v. Evans*, 275 F.3d 1126, 1130 (D.C. Cir. 2002) ("[W]e cannot ask [plaintiff] to exhaust an administrative remedy that does not exist."). It bears noting that Thompson Hine attorney Matthew R. Nicely "contacted the Department of Commerce to determine whether the Department had a procedure for disqualifying counsel for conflicts of interest, and was told by Michele Lunch of the Import Administration's Chief Counsel's office that no such process exists." Affidavit of Matthew R. Nicely ("Nicely Aff.") ¶ 88 (Dkt. 18-1).

432 U.S. 333, 346 (1977)); *see also Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993)

("[T]he Supreme Court's yardstick demands that courts be very confident that a party

cannot recover the jurisdictional amount before dismissing the case for want of

jurisdiction."). This Court, too, has recognized that "[i]n general, '[a] plaintiff's

allegation that the matter in controversy exceeds the jurisdictional amount requirement,

even when it is in cursory form,' is sufficient to evade dismissal." *RDP Techs., Inc. v.

Cambi AS*, 800 F. Supp. 2d 127, 137 (D.D.C. 2011) (quoting 14AA Charles Alan Wright

et al., *Federal Practice & Procedure* § 3702 (4th ed.)) (collecting cases).

   When the plaintiff seeks injunctive relief, "the amount in controversy is measured

by the value of the object of the litigation." *Hunt*, 432 U.S. at 347. The Court "may look

either to the value of the right that plaintiff seeks to enforce or to protect[,] or to the cost

to the defendants to remedy the alleged denial." *Smith*, 593 F.2d at 1099 (footnote and

internal quotation marks omitted). Put another way, "[t]he value of injunctive relief for

determining the amount in controversy can be calculated as the cost to the defendant."

*Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 153 (D.D.C. 2007) (citing *Comm.

for GI Rights v. Callaway*, 518 F.2d 466, 472–73 (D.C. Cir. 1975)).[4] Although it is often

---

[4] Defendants cite *National Consumers League v. General Mills, Inc.* ("*NCL*"), 680 F.
Supp. 2d 132, 140 (D.D.C. 2010), and *National Organization for Women v. Mutual of
Omaha Ins. Co.* ("*NOW*"), 612 F. Supp. 100, 107–08 (D.D.C. 1985), for the proposition
that the value of damages must be measured from the plaintiff's view. Def.'s Mem. at 7.
Yet, defendants ignore a material point of distinction between those cases and the one
now before the Court. Both *NCL* and *NOW* addressed whether the amount in controversy
can be calculated by adding up, or aggregating, the values of separate claims brought by

difficult or impossible to assign precise monetary values to important legal rights, an

action seeking an injunction to protect or vindicate those rights can meet the amount-in-

controversy requirement.  *See Comm. for GI Rights*, 518 F.2d at 472 ("'Absolute certainty

as to the amount is not essential; it suffices that there is a present probability that the

damages or the right sought to be protected meet the statutory requirement.'" (quoting

*Gomez v. Wilson*, 477 F.2d 411, 420 n.51 (D.C. Cir. 1973))).

Whether viewed from plaintiff's or defendants' perspective, there is no way for the

Court to find "to a legal certainty" that the amount in controversy in this case is below

$75,000.  In fact, there are strong indications that, if plaintiff is entitled to any relief at all,

---

or against different parties.  *See NCL*, 680 F. Supp. 2d at 139–40; *NOW*, 612 F. Supp. at
107–09.  Their holdings relied on the Supreme Court's decisions in *Snyder v. Harris*, 394
U.S. 332, 335–36 (1969) and *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 293–94 (1973),
which held that multiple parties' (or class members') damages cannot be aggregated to
reach a jurisdictional minimum.

Contrary to the parenthetical accompanying defendants' citation to *NOW*, that case
does not really "reject[] defendant's-view calculation of damages for diversity jurisdiction
when injunctive and monetary relief has been requested."  Def.'s Mem. at 7.  What *NOW*
actually says is:  "[T]o allow the defendant's view test to be used whenever injunctive
relief is sought along with damages *in a class action* would undermine the holdings of
*Zahn* and *Snyder*" because "viewing the jurisdictional amount issue from the defendant's
point of view is simply another way of aggregating [plaintiffs'] claims."  612 F. Supp. at
108 (emphasis added); *cf. Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 99, 103–06
(D.D.C. 2008) (rejecting defendant's-view calculation as a form of aggregation when
plaintiff was "acting in a representative capacity on behalf of the interests of the general
public").

Aggregation is not at issue in this case, so I will follow the line of authorities
recognizing defendant's-view damages calculations, even in cases where the plaintiff
seeks monetary damages and injunctive relief.  *See Busby v. Capital One, N.A.*, --- F.
Supp. 2d ----, 2013 WL 1191180, at *10 (D.D.C. Mar. 25, 2013).

13

the value of that relief will greatly exceed $75,000.  As I see it, there are two "object[s] of the litigation" in this case: (1) defendants' ongoing representation of the Hebei Companies, which plaintiff seeks to enjoin; and (2) plaintiff's confidential information, the disclosure of which might constitute a breach of fiduciary duty and could be remedied by compensatory damages.

As to the first—defendants' representation of the Hebei Companies—from defendants' perspective, this business relationship appears to be worth far more than $75,000.  To say the least, "the cost to the defendant" of terminating that relationship would be substantial.  Indeed, according to his declaration, Husisian is the Hebei Companies' *only* attorney working on trade matters.  Declaration of Gregory Husisian ("Husisian Decl.") ¶ 50 [Dkt. #16-1].  As of November 2012, he had already spent many hours meeting with his clients, learning about their operations and facilities, overseeing their preparation of a Commerce Department questionnaire, and drafting lengthy narrative portions of the questionnaire himself. *Id.* ¶¶ 53–54.  Looking ahead, Husisian anticipates (i) briefing a number of issues relating to the questionnaires, (ii) working on an "exhaustive (likely two-week) verification of" questionnaire responses, and (iii) "[a]fter the publication of the preliminary determination, . . . submi[tting ] arguments related to the proper calculation of the antidumping duty rate." *Id.* ¶ 56d–e.  Husisian's description of the extensive work involved in an antidumping review comports with GEO's allegation that Husisian worked more than 1,400 hours on glycine-related issues for GEO, over 300

of which were spent on the Commerce Department's review of its tariffs on Chinese producers. *See* Compl. ¶ 15; Nicely Aff. ¶¶ 15, 21.  It is therefore reasonable to assume that defendants will bill the Hebei Companies upwards of $75,000 legal services, and loss of those fees is the "cost" of an injunction.

Turning to the second "object[] of the litigation"—plaintiff's confidential information—the Court is not at all confident, much less "very confident," that its value is less than $75,000.  The Court must accept as true GEO's allegations that Husisian obtained confidential information from GEO. *See Budik*, 2013 WL 1386211, at *4; *see also* Compl. ¶¶ 16–17, 20, 26, 31.[5] If the supposed information could be used by foreign glycine producers to lower their tariffs on U.S. imports, it would be extremely valuable both to the foreign producers and to GEO.  Relatedly, a breach of fiduciary duty that results in the use of that information by a foreign producer could certainly result in compensatory damages exceeding $75,000. Assuming the alleged information exists and would be useful to the Hebei Companies, there is a very high probability that its value to both plaintiff and defendants far exceeds the statutory minimum for diversity jurisdiction. Accordingly, I find that I have jurisdiction over this matter under 28 U.S.C. § 1332.

## II.     Plaintiff's Complaint Fails to State a Claim for which Relief Can Be Granted.

While I disagree with will defendants jurisdictional argument, I will nevertheless

---

[5] These are just the allegations in the complaint; whether GEO has supported them with sufficient facts to state a plausible claim for relief is another matter, to be taken up in Part II, *infra*.

exercise my authority to dismiss plaintiff's complaint *sua sponte* because it fails to plead

facts sufficient to state a claim for a violation of Rule 1.9 or a breach of fiduciary duty.

### A.     The Complaint Does Not Plead a Violation of Rule 1.9 of the District of Columbia Rules of Professional Conduct.

Rule 1.9 states that "[a] lawyer who has formerly represented a client in a matter

shall not thereafter represent another person in the same or a substantially related matter

in which that person's interests are materially adverse to the interests of the former client

unless the former client gives informed consent." An attorney violates the rule only if

three elements are established: (1) "the attorney accused of the violation is a 'former

attorney' with respect to a party presently before the court," (2) "the subject matter of the

former representation is the same as, or substantially related to, the present matter on

which the alleged violation of Rule 1.9 is based," and (3) "the interests of the former

client are adverse to the interests of the party represented by the attorney who is accused

of violating Rule 1.9." *Paul v. Judicial Watch, Inc.*, 571 F. Supp. 17, 21 (D.D.C. 2008).

The second element is of particular interest here. The DCRPC define "matter" as

including "any litigation, administrative proceeding, lobbying activity, application, claim,

investigation, . . . or any other representation, except as expressly limited in a particular

rule." DCRPC 1.0(h). The comments to Rule 1.9 elaborate further on the scope of, and

relationship between, "matters" in this context:

> [2] The scope of a "matter" for purposes of this rule
> may depend on the facts of a particular situation or
> transaction.  The lawyer's involvement in a matter can also be

a question of degree.  When a lawyer has been directly
involved in a specific transaction, subsequent representation
of other clients with materially adverse interests clearly is
prohibited.  On the other hand, *a lawyer who recurrently
handled a type of problem for a former client is not
precluded from later representing another client in a wholly
distinct problem of that type even though the subsequent
representation involves a position adverse to the prior client*.
. . . Rule 1.9 is intended to incorporate District of Columbia
and federal case law defining the "substantial relationship"
test. *See, e.g., Brown v. District of Columbia Board of Zoning
Adjustment,* 486 A.2d 37 (D.C. 1984) (en banc); *T.C. Theatre
Corp. v. Warner Brothers Pictures,* 113 F. Supp. 265
(S.D.N.Y. 1953), and its progeny.

 [3] Matters are "substantially related" for purposes of
this rule if they involve the same transaction or legal dispute
or if there otherwise is *a substantial risk that confidential
factual information as would normally have been obtained
in the prior representation would materially advance the
client's position in the subsequent matter*. . . . A conclusion
about the possession of such information may be based on the
nature of the services the lawyer provided the former client
and information that would in ordinary practice be learned by
a lawyer providing such services.

DCRPC 1.9, cmts. 2, 3 (emphases added).  In *Brown*, the District of Columbia Court of

Appeals stated that two matters are "substantially related" if "it is reasonable to infer

counsel may have received information during the first representation that might be useful

to the second." 486 A.2d at 50; *see also Paul*, 571 F. Supp. 2d at 25.  The Restatement

(Third) of the Law Governing Lawyers ("Restatement") § 132 provides a similar

definition:  matters are "substantially related" if "(1) the current matter involves the work

the lawyer performed for the former client; or (2) there is a substantial risk that

17

representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known."  Under the second part of this definition, a "[s]ubstantial risk exists where it is reasonable to conclude that it would materially advance the client's position in the subsequent matter to use confidential information obtained in the prior representation." *Id.* cmt. d(iii).

GEO alleges that the Hebei Companies' new shipper review is "the same matter" as the Commerce Department's 2007 and 2008 review of two existing glycine producers.  Compl. ¶ 26.  But GEO fails to provide any support for this "legal conclusion[] cast in the form of [a] factual allegation[]."  *See Kowal*, 16 F.3d at 1276.  Upon closer scrutiny, it is clear that these matters are not at all "the same," but are in fact distinct proceedings, linked only at a high level of generality.  The Department of Commerce has imposed a tariff on Chinese glycine producers for more than eighteen years, since March 1995, when it published its Antidumping Duty Order: Glycine From the People's Republic of China, 60 Fed. Reg. 16,035, 16,116 (Mar. 29, 1995).  Subsequent reviews are assigned the same identification number (A-570-836), but they are initiated by separate petitions brought by different parties seeking their own individualized relief.  *See* Compl. ¶ 12.[6]  The Hebei

---

[6] *See, e.g.*, Glycine From the People's Republic of China: Preliminary Partial Affirmative Determination of Circumvention of the Antidumping Duty Order and Initiation of Scope Inquiry, 77 Fed. Reg. 21,387, 21,532 (Apr. 10, 2012) (preliminary results from review of Salvi Chemical Industries Limited and AICO Laboratories India Ltd., upon petition of U.S. producers); Glycine From the People's Republic of China: Preliminary Results of

Companies' request for review, for instance, was published in October 2012. *See* Glycine From the People's Republic of China: Notice of Initiation of Antidumping Duty New Shipper Review, 77 Fed. Reg. 65,611, 65,669–70 (Oct. 30, 2012).

Under the DCRPC's definition of the word, each Commerce Department review or proceeding—including a new shipper review—is its own "administrative proceeding, . . . claim, [or] investigation" and therefore qualifies as its own "matter." Rule 1.0(h). It would be contrary to this definition, not to mention common sense, for this Court to lump together every glycine review that has occurred in the past eighteen years and that occurs indefinitely into the future simply because they deal with the same general subject matter under the same administrative I.D. number. GEO's use of the phrase "Glycine Trade Case" does not transform these separate investigative and administrative proceedings into a single "matter" for purposes of applying Rule 1.9.

That said, it is possible that separate glycine matters may be "substantially related" under the tests set forth above. In this case, however, GEO has failed to allege facts that would allow a factfinder reasonably to infer that Husisian may have received information

---

Antidumping Duty Administrative Review, 70 Fed. Reg. 17,583, 17,649 (Apr. 7, 2005) (preliminary results from review of petitioner-Baoding Mantong Fine Chemistry Co., Ltd.); Notice of Preliminary Results of Antidumping Duty New Shipper Review: Glycine From the People's Republic of China, 68 Fed. Reg. 13,615, 13,669 (Mar. 20, 2003) (preliminary results from new shipper review of petitioner-Tianjin Tiancheng Pharmaceutical Co. Ltd.). The Commerce Department also conducts its own periodic "sunset reviews." *See, e.g.*, Glycine From the People's Republic of China: Continuation of Antidumping Duty Order, 76 Fed. Reg. 57,897, 57,951 (Sept. 19, 2011).

during his representation of GEO that might be useful in his representation of the Hebei Companies, as required by Rule 1.9 and *Brown*, 486 A.2d at 50.

The complaint lists certain forms of confidential information that Husisian may have learned while representing GEO ("information regarding GEO's positions, strategies and work product") as well as some information Husisian may have learned that is not alleged to be confidential ("research related to input values for glycine production"), Compl. ¶ 17, the disclosure of which could allegedly harm GEO, *id.* ¶¶ 26, 31. But GEO never even hints at how the information learned in the GEO representation might be useful to Hebei in its new shipper review, nor do the facts alleged in the complaint suggest that information from a 2007 and 2008 proceeding would have any bearing on a new shipper review conducted in 2013.

Even under *Brown*'s fairly lax "may have learned information" standard, plaintiff still must plead facts showing that information from the first matter "might be useful in the second." 486 A.2d at 50. Plaintiff's complaint offers no insight into the nature of *either* proceeding.[7] Nor does the complaint specify what (if any) role GEO will have in the new shipper review. If GEO is uninvolved in that proceeding, then it is implausible that "information regarding GEO's positions, strategies and work product," Compl. ¶ 17,

---

[7] Plaintiff obviously need not reveal confidential information in order to plead its case, but it must at least describe "the general features of the matters involved" with enough specificity to establish that Husisian may have obtained information in the 2007 and 2008 representation that would be useful now. Restatement § 132, cmt. d(iii).

would be of any use whatsoever to the Hebei Companies.  Furthermore, the complaint

does not allege that the GEO's "research related to input values for glycine production" is

confidential, or that knowledge of that information could "materially advance" the Hebei

Companies' position.  *See* DCRPC 1.9, cmt. 3; Restatement § 132, cmt. d(iii).  Absent

more fulsome allegations about the subject matter of the 2007 and 2008 GEO

representation and the ongoing Hebei Companies representation, it is impossible to infer

that the matters are "the same or [] substantially related," under Rule 1.9.  Thus, the Court

cannot find anything "more than the mere possibility of misconduct," and the complaint

does not show that GEO is entitled to relief.  *Iqbal*, 556 U.S. at 679.

## B.    The Complaint Does Not Plead a Breach of Fiduciary Duty

Finally, the complaint fails to allege a breach of fiduciary duty that would entitle

GEO to compensatory damages.  In the District of Columbia and in our Circuit, "[t]o

recover on a claim for breach of fiduciary duty, the plaintiff must prove by a

preponderance of the evidence that a fiduciary duty existed between the parties, that the

defendant violated that fiduciary obligation, ***and that the plaintiff suffered damages as a

proximate result of the violation***."  *Gov't of Rwanda v. Rwanda Working Grp.*, 227 F.

Supp. 2d 45, 64 (D.D.C. 2002) (emphasis added) (citing *Landise v. Mauro*, 725 A.2d 445,

450 (D.C. 1998)).[8]

---

[8] *See also Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996) ("Compensatory
damages make plaintiffs whole for the harms that they ***have suffered as a result*** of
defendants' actions.  Clients therefore need to prove that their attorney's breach ***caused***

As already discussed, the Court finds that GEO has failed to plead facts from which a factfinder could infer that defendants have violated a fiduciary obligation by engaging in a Rule 1.9 conflict of interest. *See supra* Part II.A. But even if the complaint adequately alleged a breach of duty, plaintiff's claim would still fail because GEO does not allege that the breach has caused any injury. The complaint merely alleges that the disclosure of GEO's confidential information would cause GEO significant harm, *see* Compl. ¶¶ 26, 31, but it does not say that any actual disclosure has occurred or that any harm has been suffered as a result of defendants' work for the Hebei Companies. Plaintiff, therefore, has not pleaded facts showing a plausible cause of action for breach of fiduciary duty.[9]

## CONCLUSION

---

*them injury* so that the trier of fact can determine whether they are entitled to any damages." (emphases added)); *Bode & Grenier, L.L.P. v. Knight*, 821 F. Supp. 2d 57, 64 (D.D.C. 2011) ("In order to state a claim under District of Columbia Law for breach of fiduciary duty, [plaintiffs] must allege . . .[,] to the extent plaintiff seeks compensatory damages[,] *the breach proximately caused an injury*." (emphasis added; internal quotation marks omitted)).

[9] Despite its flaws, the complaint does not allege facts that *foreclose* plaintiff's entitlement to relief, and it is possible that GEO could amend  its allegations to cure the

For all the foregoing reasons, defendant's Motion to Dismiss [Dkt. #10] is hereby

DENIED, but plaintiff's Complaint is DISMISSED for failure to state a claim.  An

appropriate order shall accompany this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

aforementioned defects.  *See Epps*, 719 F. Supp. 2d at 13.